# In the United States Court of Federal Claims

No. 23-1113C
(Originally Filed: October 18, 2023)
(Re-issued: November 20, 2023)[1]

* * * * * * * * * * * * * * * * * * * * * * * * *

MYRIDDIAN, LLC,

        *Plaintiff*,

v.

THE UNITED STATES,

        *Defendant*,

and

J29, INC.,

        *Intervenor*.

Post-award bid protest; FAR 2.101; FAR 15.101-1(a); best value determination.

* * * * * * * * * * * * * * * * * * * * * * * * *

    *John R. Tolle*, McLean, VA, for plaintiff.

    *Ebonie I. Branch*, Trial Attorney, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, with whom were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, *Martin Hockey*, Assistant Director, for defendant. *Douglas Kornreich*, Department of Health and Human Services, of counsel.

    *Ryan C. Bradel*, Tysons, VA, for intervenor. *Chelsea A. Padgett*, of counsel.

---

[1] This opinion was originally issued under seal pursuant to the protective order (ECF No. 14). The parties agree that no redactions are necessary—the opinion thus appears in full.

OPINION

BRUGGINK, *Judge*.

This is a post-award bid protest by Myriddian, LLC ("Myriddian") of an award by the Department of Health and Human Services, Centers for Medicare & Medicaid Services ("CMS" or "the agency"). The contract was awarded to intervenor J29, Inc. ("J29") under the National Correct Coding Initiative program ("NCCI") for coding edits and other methodologies to ensure efficient and proper adjudication of Medicare and Medicaid claims (among other related services).

The parties filed cross-motions for judgment on the administrative record. After full briefing, we held oral argument on September 20, 2023, and announced that we would deny the protest. The reasons are set out here. Because CMS completed a thorough and reasonable best value analysis of the proposals before awarding a contract to J29, we grant defendant's and intervenor's motions for judgment on the administrative record and deny plaintiff's motion.

BACKGROUND

On October 20, 2022, CMS issued a solicitation under the NCCI to procure correct coding edits and other related services to ensure proper adjudication and payment of Medicare and Medicaid claims. The contract to be awarded by the government was a firm fixed price contract with a one-year base period, three one-year option periods, another ten-month option period, and an optional 90-day transition period. AR 358.

The solicitation outlined the selection criteria to be used by CMS in choosing the successful bid. Using the Best Value Tradeoff process, the agency reserved the right to choose a bid other than that which was the highest technically rated or that which was cheapest. The agency stated that although it was "more concerned with obtaining superior technical[] features than with making an award at the lowest overall cost," it would not choose a significantly more expensive bid "to achieve slightly or moderately superior technical management features." AR 419.

The factors CMS would consider in its analysis were, in descending order of importance: factor 1 ("technical understanding & approach—scenario response"), factor 2 ("key personnel and staffing plan"), and factor 3 ("past performance"), with each offeror awarded an adjectival rating of either high confidence, neutral confidence, or low confidence on each factor.

AR 420. Under the two-phased process outlined in the solicitation, offerors receiving a low confidence rating on factor 1 would have their bids rejected without further consideration of the other factors. *Id.* Offerors receiving a rating of neutral confidence or better on factor one would be evaluated on factors 2 and 3. *Id.*

CMS received proposals from six businesses, including J29 and Myriddian. Although the agency originally awarded the contract to one of the other businesses, a successful post-award bid protest and corrective action by CMS resulted in the termination of that contract. The agency decided to choose a new proposal from the original six that were submitted (minus the vendor that had been terminated). CMS then announced that, based on the criteria stated in the solicitation, it had chosen J29 out of the remaining five offerors. The agency provided Myriddian with a written debriefing, including a comparison of the cost and rating of the Myriddian and J29 proposals. AR 2894. A summary table of that comparison follows:

| Offeror | Factor 1: Scenario Response | Factor 2: Key Personnel & Staffing Plan | Factor 3: Past Performance | Total Price |
|---|---|---|---|---|
| J29 | Neutral Confidence | Neutral Confidence | Neutral Confidence | $11,862,285.13 |
| Myriddian | High Confidence | High Confidence | Neutral Confidence | $15,989,032.93 |

Regarding factor 1, the agency identified one strength and eight weaknesses in J29's proposal. The agency identified one strength and four weaknesses in Myriddian's proposal on the same factor. While the additional weaknesses in intervenor's proposal are accounted for in the adjectival ratings above, the Technical Evaluation Panel ("TEP") explained that the weaknesses in both proposals would be mitigated by government communication and oversight. AR 2694–95.

Factor 2 presented a similar situation, with the agency identifying one weakness in J29's proposal and no weaknesses (with one strength) in Myriddian's. The weakness in J29's proposal was related to its proposed staffing arrangement for one of the five "Key Personnel" positions mandated in the solicitation—the Medical Director position. Under J29's proposal, the Medical Director would work only part time on the project (half time in the first year and progressively less in following years). However, the Medical Director would be supported by a "Non-key Personnel" member proposed by J29, the Associate Medical Director.

The agency expressed concern at this arrangement in its assessment of J29's proposal, although the solicitation had explicitly allowed for alternative staffing arrangements and provided that offerors should assume

3

all key personnel would work full time except for the Medical Director and one other. The risk of having a part-time Medical Director could be mitigated by the existence of the Associate Medical Director, the agency explained, although it could not definitively say how much the risk would be mitigated because it could not consider the Associate Medical Director's full list of qualifications due to the solicitation's resume page limit.

The Source Selection Authority ("SSA") reviewed the assessments of each of the offerors and completed a detailed Best Value Tradeoff analysis comparing the proposals of Myriddian and J29. The SSA emphasized that her analysis was not simply a quantitative comparison of the number of strengths and weaknesses in each proposal but was rather a comprehensive qualitative evaluation to determine how each proposal's strengths and weaknesses would affect each offeror's ability to perform the contract successfully. AR 2699.

This evaluation resulted in a conclusion that "[w]hen compared, all the identified weaknesses in both proposals were determined to be minimal and the associated risks were determined to be reasonably mitigated through government oversight" and that "there was no significant difference between the qualitative variations in the disadvantages expected from the weaknesses of either proposal." AR 2699. The SSA thus "determined that neither the benefits of Myriddian's proposal nor the risk associated with J29's proposal are significant enough to warrant the 34.8% price premium." AR 2700.

Following CMS's award of the contract to J29, Myriddian filed its complaint on July 18, 2023.

DISCUSSION

The solicitation contemplated that the agency would use a best value analysis in determining which proposal best suited the agency's needs. "'Best value' means the expected outcome of an acquisition that, in the Government's estimation, provides the greatest overall benefit in response to the requirement." FAR 2.101. This method of choosing an offeror generally comes into use "when it may be in the best interest of the Government to consider award to other than the lowest priced offeror or other than the highest technically rated offeror." FAR 15.101-1(a). An SSA is entrusted to use her best "independent judgment" to select a bid "based on a comparative assessment of proposals against all source selection criteria in the solicitation." FAR 15.308. The SSA's determination regarding which proposal provides the best value to the government is afforded a high degree of deference. *Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1330

(Fed. Cir. 2004); *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996).

Myriddian argues that CMS conducted its Best Value analysis improperly for three reasons: that CMS erroneously evaluated the qualifications of J29's proposed personnel (particularly the Program Director and the Medical Director); that CMS did not properly compare the technical merits of the two proposals; and that CMS did not correctly conduct a best value tradeoff analysis in choosing a proposal. We review CMS's decision to consider whether it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. . . ." 5 U.S.C. § 706 (2018); 28 U.S.C. §1491(b)(4) (2018).

I. Personnel Evaluation of J29's Proposal

The solicitation included a requirement that each proposal include at least five categories of Key Personnel: a Program Director, Medical Director(s), Coding Specialists, an Information Technology Specialist, and a Quality Assurance Specialist. AR 538. The solicitation went on to say that:

> The Offeror shall submit resumes (included as appendices) for each Key Personnel position listed in the SOW. Resumes shall include sufficient detail about relevant professional work experience, skills, education and qualifications necessary to determine if the proposed candidate meets the minimum requirements outlined in Section II, D, Key Personnel, Staffing & Core Competencies of the SOW.

AR 616. The solicitation also stated that offerors should "[a]ssume one FTE for each of the key personnel positions with the exception of Medical Director and Coding Specialist. Alternative staffing arrangements will be considered if supported by the Contractor's technical solution." AR 430. Myriddian has taken issue with the SSA's evaluation of three aspects of J29's staffing plan: its Program Director, its Medical Director, and the overall qualification level of the proposed staff.

A. Program Director

Myriddian's objection to J29's Program Director centers on the proposed candidate's undergraduate field of study. The solicitation required that a proposal's candidate for Program Director must possess a bachelor's or master's degree "in a field of study that can be reasonably interpreted to perform tasks related to this position." AR 456. The solicitation does not provide further detail on this requirement.

Myriddian asserts that the J29 Program Director's undergraduate degree in Psychology is inadequate to satisfy the requirement set forth in the solicitation, and therefore should have warranted a rejection of J29's bid out of hand. However, we must evaluate simply whether the SSA's evaluation reasonably complied with the requirements outlined in the solicitation. Considering the generality of the degree requirement in the solicitation, it is eminently reasonable to believe that a person with a degree in a quasi-medical field—especially one focused on human behavior such as Psychology—would be able to lead a team in successfully fulfilling a contract. We see no reason to disturb the SSA's judgment on that point.

### B.  Medical Director

Myriddian's argument regarding J29's Medical Director involves its proposed use of a supplemental position not included in the solicitation's list of Key Personnel—an Associate Medical Director. The solicitation required that each proposal include a Medical Director whose qualifications included:

- Three years experience practicing medicine as a board-certified physician with no previous sanctioning or exclusion from the Medicare program;
- Experience in the health insurance industry, a utilization review firm, or another health care claims processing organization in a role that involved compliance responsibilities;
- Experience in interpreting HCPCS/CPT codes and coding conventions;
- Extensive knowledge of Medicare and Medicaid payment, coverage and coding policies; and
- Education and Licensure:
    - Doctor of Medicine or Doctor of Osteopathy Degree
    - Current licensure to practice medicine

AR 456. J29 supplemented the part-time status of its Medical Director by creating a new position, the Associate Medical Director. This position is essentially a support role, created to assist the Medical Director in completing her duties. J29 explained in its proposal that the Associate Medical Director would work full time for the entirety of the contract. AR 1324.

Myriddian does not take issue with the qualifications of J29's proposed Medical Director. It rather focuses on the fact that J29's Medical Director will work only part time—specifically .40 FTE for the first two contract years, then .35 FTE for the third contract year, and .30 FTE for the

final contract year. Myriddian argues that because J29's Medical Director will work less than half-time, the supporting Associate Medical Director is effectively fulfilling the mandatory role of Medical Director and should thus be required to fulfill the Medical Director qualifications outlined in the solicitation. The SSA could not have found that the Associate Medical Director met these qualifications because, as the parties do not dispute, the agency could not consider the Associate Medical Director's resume because it exceeded the page limit contained in the solicitation. Myriddian argues based on this fact that J29's proposal was incomplete and could therefore not have been properly considered by the SSA.

We disagree. The first flaw in Myriddian's reasoning is that it assumes an inherent problem with J29's decision to utilize a half-time Medical Director. This is not the case—the solicitation explicitly excludes the Medical Director position from the full-time requirement and states that alternative staffing arrangements are permitted. AR 430.

Considering the agency's apparent inability to consider the Associate Medical Director's resume, it could perhaps be cause for concern that the Medical Director would work only half-time and be supported full-time by the Associate. While it may have been a problem if the SSA had not considered this risk, she did consider it at length. AR 2697. During her analysis, the SSA explained why she viewed this risk as minimal:

> While this could present a risk to successful performance, this risk is considered minimal because it is only precautionary. The proposed Medical Director duties are consistent with the SOW and the Offeror's technical approach and therefore only if circumstances change would the proposed level of effort present a potential risk, which would be mitigated through additional Government oversight and could also be mitigated through the support of the Associate Medical Director, if their qualifications are confirmed.

AR 2697.

Because the Associate Medical Director was not a Key Personnel position, the inclusion of a resume for that person in J29's proposal was not required for the submission of a complete bid.[2] The SSA engaged in a lengthy and reasoned discussion of why a fully qualified part-time Medical Director

---

[2] We note, however, that the SSA did have at her disposal a summary of the proposed Associate Medical Director's qualifications as part of J29's staffing plan. AR 1322.

7

supported by a full-time Associate Medical Director would present minimal risk to the success of the contract. We therefore refuse to disturb the SSA's judgment on this issue.

### C.  General Personnel Comparison

Myriddian's final personnel-related argument is that it was unreasonable to select J29's proposal because Myriddian's proposed personnel were generally more qualified than those proposed by J29. Myriddian does not provide evidence for this assertion aside from pointing out that two of its own proposed personnel possess advanced degrees which are not necessary to comply with the solicitation. Pl.'s Mot. for J. Administrative R. 16 [hereinafter Pl.'s MJAR]. Even if Myriddian's personnel are more qualified on paper, the government argues that this court may not substitute its own judgment for that of the SSA regarding the fitness of proposed personnel.

Again, the argument that the SSA did not adequately consider the differences in qualifications between each proposal's key personnel falls flat. The adjectival ratings given by the agency explicitly recognize that Myriddian's staffing plan was superior—the agency expressed high confidence in Myriddian's proposal in this regard while only expressing neutral confidence in J29's. Although not providing much detail in her decision memo, the SSA does reference the difference in qualification levels, particularly focusing on the additional medical degrees held by Myriddian's personnel. AR 2696–97.

Even if Myriddian's proposed personnel had a host of superfluous graduate degrees compared to the minimum necessary degrees held by J29's personnel, it would still be reasonable for the agency to conclude that J29 could adequately perform the contract. We cannot declare objectively unreasonable the SSA's belief that personnel with fewer advanced degrees could satisfactorily complete the contract's tasks.

### II.  Technical Comparison of J29's and Myrridian's Proposals

Regarding the agency's Factor 1 technical analysis, Myriddian argues that it should have been awarded the contract because it achieved a higher adjectival rating than J29 and its proposal contained fewer weaknesses in the agency's review. The SSA, however, viewed these quantitative differences as making little difference in the technical aptitude of the two proposals. We now examine whether this was a reasonable determination.

8

As the government points out, this court "will examine the agency's evaluation to ensure that it was reasonable and consistent with the evaluation criteria and applicable statutes and regulations, since the relative merit of competing proposals is primarily a matter of administrative discretion." *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996). In other words, it is not our role to quibble with reasonable qualitative determinations of agency personnel regarding the relative value of proposals—the agency generating the solicitation is the best judge of which proposal will result in the best outcome for that agency's projects. We are only to act as a check on arbitrary decision making.

It is true that the technical portions of Myrridian's proposal elicited a high confidence rating while J29's earned only neutral confidence. This likely arose from the fact that the agency detected only four weaknesses in Myriddian's proposal compared to eight in J29's proposal under Factor 1. However, the SSA made clear from the start that quantitative differences would not be the determining factor when comparing the proposals. Rather, her "evaluation [was] not a comparison of the number of strengths or weaknesses, but a comparison of the qualitative variations in the disadvantages expected from the weaknesses." AR 2699.

The SSA provided a detailed account of her reasoning in making this comparison. She repeatedly acknowledged that J29's proposal carried a greater number of weaknesses, but explained clearly that she viewed the qualitative significance of this quantitative difference as relatively insignificant: "When compared, all the identified weaknesses in both proposals were determined to be minimal and the associated risks were determined to be reasonably mitigated through Government oversight. . . . there was no significant difference between the qualitative variations in the disadvantages expected from the weaknesses of either proposal." AR 2698; AR 2699. It is not our role to second guess a discretionary determination such as this. *See Comm'n Constr. Servs., Inc. v. United States*, 116 Fed. Cl. 233, 266 (2014).

### III.  The SSA's Best Value Tradeoff Analysis

The final issue concerns whether the agency conducted a proper best value analysis when deciding between proposals. Myriddian argues that, rather than complying with the solicitation's evaluation requirements, the agency performed an improper lowest price/technically acceptable analysis. The government argues that the SSA adequately documented her rationale for concluding that J29's proposal provided the best value to the government

9

despite its lower technical ratings, and therefore satisfied the solicitation's requirements.

The solicitation stated the following regarding the intended selection process to be used by the agency in choosing a proposal:

> The Government intends to award one Firm-Fixed Price contract resulting from this solicitation using a Best Value Tradeoff Process as described in FAR Part 15.101-1 "Tradeoff Process." This tradeoff technique allows the Government to consider award to other than the lowest priced/cost Offeror or other than the highest technically rated Offeror. It permits tradeoffs among cost/price and non-cost/price evaluation factors. In making this comparison the Government is more concerned with obtaining superior technical/management features than with making an award at the lowest overall cost to the Government. All evaluation factors other than cost or price, when combined, are significantly more important than cost or price. However, the Government will not make an award at a significantly higher overall price to the Government to achieve slightly or moderately superior technical management features. In addition, as the degree of technical equality (i.e. all factors other than price) increases between proposals, price will become more important.

AR 561. This part of this solicitation highlights that although the government is more concerned with choosing a technically superior proposal than the cheapest one, it would "not make an award at a significantly higher overall price to the Government to achieve slightly or moderately superior technical management features." AR 561.

If we are to reject the SSA's determination, we require more than plaintiff's disagreement and unhappiness with the SSA's decision. *Harmonia Holdings Grp., LLC v. United States*, 152 Fed. Cl. 97, 111 (2021). The SSA in this case specifically discussed the strengths and weaknesses of the proposals and how they affected the proposals' relative value. In the end, the Contracting Officer made the reasoned determination that despite "qualitative advantages expected to be gained from Myriddian's additional clinical staff. . . .those advantages alone would [not] warrant the 34.8% price premium." AR 2699. This is precisely the sort of determination contemplated in the solicitation's guidelines: the ability to reject a proposal that is technically higher rated because its value does not match its cost relative to other proposals.

10

Myriddian again discusses its view that the strengths of its proposal warranted its selection by the SSA. Pl.'s MJAR 17–18. Myriddian fixates on the proposals' relative adjectival ratings and the quantitative difference in the number of strengths and weaknesses between the proposals. Plaintiff asserts that an agency rejecting a higher technically rated proposal for a cheaper one requires adequate justification, and that the SSA in this case did not provide such justification. Pl.'s MJAR 18–19. However, Myriddian does not examine the language provided by the SSA documenting her rationale or discuss the minimal qualitative disparity between the proposals despite the quantitative ratings. As above, we refuse to disturb the agency's judgment because it provided adequate, reasonable justification of its decision to choose J29's cheaper proposal over Myriddian's expensive, higher-rated proposal.

## CONCLUSION

Because the agency provided a thorough, reasonable justification for choosing J29's proposal, the following is ordered:

1. Plaintiff's motion for judgment on the administrative record is denied.

2. Defendant's motion for judgment on the administrative record is granted.

3. Intervenor's motion for judgment on the administrative record is granted.

The Clerk is directed to enter judgment for defendant. No costs.

s/Eric G. Bruggink<br>
ERIC G. BRUGGINK<br>
Senior Judge